**SCALA et v ANSLOVAR et**

Common Pleas Court, Cuyahoga Co

Decided August 17, 1939

Dorr E. Warner, Cleveland, for plaintiffs.

Locher, Green & Woods, Cleveland, for defendants.

## OPINION

By HURD, J.

This case comes before the court at this time upon the demurrer of the defendants, to the second amended reply of the plaintiffs.

In order to gain a complete understanding of the issues presented it is deemed helpful to review briefly the pleadings heretofore filed.

The amended petition is brought on behalf of plaintiffs and all other non-assenting creditors and depositors of The North American Trust Company against the North American Trust Company hereinafter referred to as the Trust Company, and numerous other defendants as stockholders of the Trust Company. Plaintiffs in their first cause of action allege that the Trust Company has failed to meet its obligations, and pray that the defendants named as stockholders, and other stockholders existing at the time of the failure, be required to account for, and pay to the full extent of their constitutional stockholders' liability.

Plaintiffs allege in their second cause of action a plan of reorganization, and aver that the plaintiffs in this case did not assent to the plan and pray that all stockholders be required to account and pay to all non-assenting creditors and depositors the full extent of their stockholders' liability.

The amended petition therefore narrows down to an action by non-assenting creditors and depositors only against all stockholders of the Trust Company at the time of its failure.

An amended answer is filed on behalf of all defendants by The North American Bond & Share Company admitting quite liberally the allegations of the petition, and generally denying for the balance.

By the affirmative defense, however, defendants set up the fact that under the statute the superintendent of banks took possession of the Trust Company for the purpose of conserving its assets and for the benefit of its depositors and creditors, continuing in possession and control until the reorganization of the Trust Company under the plan approved by separate proceedings in this court in Case No. 412,093. A copy of the plan and of the decree approving the plan, as modified, is attached to and made a part of the amended answer. It is alleged that all the parties involved in this action were properly made parties, given due notice, and were expressly bound by the decree of the court confirming the reorganization plan. An important part of this allegation is to the effect that all claimants were enjoined by this decree from thereafter asserting any claim or right **contrary to the provision of the plan confirmed by the decree.**

The defendants set forth, in short, that the plan provided for the reorganization of the Trust Company by changing its name to The North American Bank Company (hereinafter referred to as the Bank Company) by reduction of the capital stock from $200,000 to $100,000, represented by five thousand shares of a par value of $20.00 each, and for the right on the part of the outstanding stockholders to purchase stock in the Bank Company at a price of $25.00 per share of which $4.00 would be credited to surplus and $1.00 to undivided profits account.

474

The plan further provided for the organization of a corporation to be known as The North American Mortgage Loan Company (hereinafter referred to as the Loan Company). All assets of the bank were transferred to the Loan Company except an amount, principally to pay unrestricted deposits and claims, 20% to depositors and creditors, the payment of claims not in excess of $5.00 etc., and cash assets equal to liabilities as of the date of the resumption of normal operations. A loan in addition to one already existing, was then made with the Reconstruction Finance Corporation and the proceeds employed to pay the Bank Company for the assets. Certificates of participation in the assets of the Loan Company are then alleged to have been issued and accepted to and by depositors and creditors. The Loan Company was to liquidate the assets, thus assigned to it, pay the loans to the Reconstruction Finance Company and pay off and repurchase the certificates of participation.

The amended answer then alleges that the plan, so approved by the decree, further provided that the existing constitutional and statutory liability of the stockholders should continue for a period of five years in its original amount except that such stockholders as should avail themselves of the privilege of purchasing stock in the reorganized Bank Company would be released from stockholders' liability at the end of five years to the extent that they had purchased 50% of the par value of the stock held by them in the Trust Company or to a like proportion of release for any lesser purchase of said stock. During said five years period or until certificates of deposits had been paid in full the stock thus subject to release was to be pledged with the Loan Company and its dividends appropriated by it in the payment of certificates of participation, and the constitutional stockholders' liability of these stockholders would be reduced to the extent of the dividends so paid.

The amended answer further states that the loan to the Reconstruction Finance Corporation has been paid and that a substantial portion of assets of the Loan Company will be available to apply on certificates of participation.

The defendants therefore pray for a dismissal and for judgment.

The second amended answer is claimed to be joined in issue by the second amended reply. The allegations of the second amended answer are partly admitted and partly denied, making an issue of the allegation that the certificates of participation have been issued and accepted by all the plaintiffs, and also leaving in issue the defendants interpretation of the decree. Affirmatively, the reply alleges that none of the defendants purchased stock in the reorganized Bank Company except that certain listed ones purchased certain amounts and failed to pledge the same with the Loan Company and that certain others purchased and did pledge. The total amount of those alleged to have purchased and pledged is $12,975.00 of the total amount subject to purchase, to-wit, $125,000.00.

As previously stated herein a demurrer has been filed by the defendants to the plaintiffs' second amended reply. The argument of the demurrer is that the decree of the court on the application for approval of the reorganization plan is res adjudicata as to the claims made by the plaintiffs.

Defending against the demurrer, plaintiffs claim, as to non-assenting creditors, first, that the decree can not be interpreted as relieving any prior stockholders from their constitutional double liability. Second, that even though the decree might be interpreted as relieving the stockholders who purchased stock in the Bank Company up to 50% par value of their original holdings or a rated proportion thereof, it cannot be interpreted as relieving those stockholders who did not purchase in the reorganization Bank Company.

Third, even though the decree might be interpreted as barring the double liability against non-assenting creditors and depositors, it is to that extent a nullity because both the legislature and the court are barred constitutionally from interferring with the contractual

obligation for double liability imposed by the constitution.

The third claim of the plaintiff's argument against the demurrer must be denied for two reasons:

First. A final judgment or decree of a court is conclusive and binding as an adjudication as to all ▬▬▬ ▪ true parties to a controversy with respect to a holding involving constitutionality, even though the same may be held unconstitutional with reference to parties new or foreign to the specific proceedings.

Second. Parties by their ▬▬▬ ▪ conduct may waive claims of unconstitutionality.

Cooley's Constitutional Limitations, 8th Edition, Volume 1, page 108, reads:

"In some cases and for some purposes the conclusiveness of a judicial determination is, beyond question, final and absolute. A decision once made in a particular controversy, by the highest court empowered to pass upon it, is conclusive upon the parties to the litigation and their privies, and they are not allowed afterwards to revive the controversy in a new proceeding for the purpose of raising the same or any other questions. The matter in dispute has become res judicata, a thing definitely settled by judicial decision; and the judgment of the court imports absolute verity. Whatever the question involved,—whether the interpretation of a private contract, the legality of an individual act, or the validity of a legislative enactment,—the rule of finality is the same."

See also with respect to waiver 23 O. Jur. 317, §513, which reads:

"Constitutional Guaranties Generally. In general an individual may waive his constitutional rights, especially when no question of public policy or public morals is involved. Moreover, an omission to act may constitute such a waiver. Even if the objection is made in the trial court in regard to a constitutional guaranty involving a personal privilege only, the judgment rendered in spite of such guaranty is not void."

8 O. Jur. 181 and 182, §§79 and 80, read as follows.

"Section 79. Waiver of Constitutional Rights. In general, an individual may waive his constitutional rights, especially when no question of public policy or public morals is involved. He may do this expressly or impliedly. An omission to act may constitute such a waiver. One who has waived a constitutional right is estopped from thereafter claiming its benefit. While a citizen may waive a constitutional right, he cannot be compelled to waive his right nor can he be arbitrarily subjected to an option to stand upon one right under penalty of losing another."

"Section 80. Waiver of Right To Question Constitutionality of Statute. It is a well-recognized doctrine that parties may so conduct themselves with respect to the subject of unconstitutional legislation that they are estopped thereafter to deny its binding character. There are cases where a law, in its application to a particular case, must be sustained, because the party who makes the objection is, by prior action, precluded from availing himself of its infirmity."

Inasmuch as the parties in this controversy were all present before the court and bound by the decree approving the plan, no appeal ▬▬▬ ▪ therefrom having been made, the decree is final and the parties are necessarily bound both by way of adjudication and by way of estoppel, since by the admitted facts they took no further steps to object to or prevent the reorganization in that proceeding.

The question before us therefore resolves itself solely into an interpretation of the decree of court rendered on the application for reorganization. If, as the plaintiffs contend, the language of that decree may not be interpreted to postpone or discontinue the liability of the stockholders, the demurrer must be overruled. And if, on the other hand, such an intention is found, it must be sustained. The immediate question therefore requires an investigation of

the decree for the purpose of ascertaining whether it limited the liability of the stockholders, and if so, whether any distinction was intended between the stockholders who failed to purchase new stock in the reorganized bank company and those who did so purchase to the extent of 50% or less of their original par holdings.

The plan, as it was consented to by the assenting parties, was attached to and made a part of the decree. The decree makes evident, however, that the plan was to some extent modified. The situation therefore makes necessary the study of both the plan and the decree for the purpose of arriving at the intent of the court's order.

The confusion may be said to arise mainly from the nature of certain paragraphs contained in the plan. This language, as set forth in the plan, is as follows:

"The existing constitutional and statutory liability of present stockholders **shall continue without modification until five years after the date upon which the bank is licensed to resume normal business. That is, for said period said liability shall continue on the basis of a capitalization of Two Hundred Thousand Dollars. At the end of said period** said liability of the **present** stockholders shall continue as at present **except** that present stockholders who purchase stock to the extent of fifty per cent (50%) or more of the par value of their present stock shall be released from all said liability on their present stock, and present stockholders who purchased a lesser amount shall be released to a proportionate extent. For and during the period above mentioned no dividends shall be paid to the owners of shares of the existing capital stock who have purchased stock on the basis of the reduced par value, but dividends declared by the board of directors payable to such holders of the reduced capital stock shall be paid to the corporation hereinafter provided for, and shall be used for the purpose of discharging and paying the loan made by Reconstruction Finance Corporation

and for retiring certificates of participation hereinafter provided for should said loan be paid prior to the expiration of the period above referred to. Owners of shares of the existing capital stock, however, who shall purchase more of said stock than fifty per cent (50%) of the par value of the present stock held by them shall be entitled to be paid dividends on said stock held by them in excess of fifty per cent (50%) of the par value of the present stock, and others not now stockholders who shall purchase said stock shall be entitled to said dividend without restrictions. **The constitutional and statutory individual liability of present stockholders shall be reduced in an amount equal to the dividends paid** to said corporation as herein provided. However, nothing herein contained shall be construed as relieving any stockholder from his constitutional and statutory liability on the capital stock as reduced. Until the expiration of said period of five years, no transfer of said stock certificates belonging to the owners of existing capital stock not in excess of fifty per cent (50%) of the par value of the present stock shall be made which will entitle the holder thereof to the dividends thereon provided for herein, except such transfers as are made by operation of law, order of a court of competent jurisdiction or to qualify as a member or members of the board of directors."

"In the event said certificates of participation are paid in full in accordance herewith before five years from and after the date of resuming normal operations by the bank, or in any event at the end of five years after said date of resuming normal operations, the dividends provided for herein to be paid to the mortgage company shall cease and terminate and the certificates evidencing ownership in said bank shall be free from any of the obligations provided for herein."

This is the only language that we find upon which the defendants may in any wise rely for their claim to the effect that the stockholders' liability is

discontinued or postponed by either the plan or the decree. The words relied upon therefore by the defendants are those to the effect that the existing constitutional statutory liability of the stockholders shall continue without modification until five years after resumption of normal business by the reorganized bank and that at the end thereof the liability shall still continue except as to those who purchase 50% or less of the par value of their original holdings, who, according to the language of the plan, are expressly released from their liability at the end of five years. This apparent release granted to purchasing stockholders is made more confusing by the additional language in the above quoted paragraph to the effect that their liability shall be reduced to an amount equal to the dividends paid on such purchased stock to the Loan Company.

There can be no dispute as to the meaning of the word "continue". Of itself it means to remain or to be kept in the present condition or status without change. It must also be recognized, however, that the use of the word continue does not necessarily negative the idea of a cessation or postponement for a period if that intention may be derived from the context. Any pending activity or right may be understood as continued to a subsequent period notwithstanding the contemplation of a periodical suspension pending the time to which it is continued. The defendants assert that this meaning is to be found in the context of the above quoted paragraphs.

The analysis, however, does not support this contention. It is necessarily apparent that if the existing constitutional liability is continued for five years, and again continued at the end of five years, it is necessarily continued forever in the absence of some language indicating cessation of the continuance. The liability therefore is the same during the five years as it is at the end of the five years. Also with reference to the purchasing stockholders, if the liability is continued for a period of five years, and is ended at the end of five years, the continuation for five years cannot possibly mean a postponement of liability or the language would mean that the liability is expunged altogether, in which event there would be no purpose or point, in the words which continue the liability for a period of five years. The conclusion is necessarily compelled, therefore, that the language of the plan continuing the liability means continue without any notion or suggestion of cessation or postponement.

This interpretation is further supported and enforced when an investigation of the decree discloses that there is no language in it whatsoever with reference to stockholders' liability except such as is found in the following paragraph:

"It is further ordered, adjudged and decreed, that stock purchased by present stockholders in the bank, as reorganized, shall, for a period of five years from and after the bank is licensed to resume normal business, be pledged with The North American Mortgage Loan Company for the benefit of the holders of certificates of participation in pursuance of said plan, without intending to impose upon The North American Mortgage Loan Company any liability thereon except as pledged, in an amount equal to the par value of the stock now owned by such stockholders, otherwise the stock purchased in the reorganized bank by present stockholders, or others, shall not be pledged. In event the constitutional and statutory liability of present stockholders is not imposed within said five year period, or in the event the certificates of participation provided to be issued in said plan have been paid or retired within said period, said stock so pledged shall be returned to the respective owners thereof, except that stock so pledged may be transferred by the Mortgage Loan Company on order of court by operation of law or to permit a stockholder of the bank as reorganized to qualify as a member of its board of directors."

The decree therefore says nothing whatsoever with reference to the continuance of the stockholders' liability, and it must be assumed that it was to remain unimpaired. On the contrary, the language above quoted from the decree recognizes the possibility of the imposition of such liability within the five year period. The superintendent of banks, who for a time assumed the responsibility of collecting this liability for the creditors, has abandoned this responsibility through the reorganization. The right therefore reverts to those parties to whom it primarily belongs, and in whom the courts have always recognized the right of enforcement, to-wit, the creditors.

5 O. Jur., §47, page 327, Subject of Banks, reads as follows:

"It will be observed, however, that the language of the Ohio statute is that the superintendent of banks 'may enforce the individual liability of the stockholders.' The right of creditors of the bank to sue to enforce it is not denied, either expressly or by implication. And if the theory advanced, that the liability imposed by the present constitutional and statutory provisions is a primary rather than a secondary one, is a correct one, a creditor could sue a stockholder before exhausting the corporate assets. * * *"

Also see 10 O. Jur., Page 622, Subject Corporations, §457, which reads:

"When Suit May Be Brought. The double liability is not a primary resource for the debts of the corporation, but is imposed for the exclusive benefit of creditors, and be resorted to by the creditors only in case of insolvency of the corporation. After insolvency, and only in the event of insolvency, a court of equity may entertain the case, render an accounting, and ascertain the validity of claims as a liability of stockholders, and render judgment. * * *"

Since the creditors are the only ones left with the right,—the language of the decree must be seen to expressly reserve this right to the creditors during the five year period. It must be noted that under the provisions of the statute providing for a plan of reorganization, to-wit, §710-89 A, the court might have provided for barring nonassenting creditors from all interest in the stockholders' liability except as such liability might have been segregated for their benefit. If it was the intention of the court to make any such arrangement in the plan, language, of course, would have been employed directly conveying that intention.

Any attempt to answer the problem presented cannot possibly ignore the constitutional difficulty which is inherent in the situation.

The plaintiffs present us with two apparently well reasoned cases decided by the Supreme Court of South Dakota, to-wit, Bush v Lien, 57 S. D. 501, and Snead v Hagen, 61 S. D. 556. In both of these cases the suit was by a creditor in an independent proceeding after the reorganization plan had been authorized. Their holdings are clearly to the effect that the constitutional liability may not be diminished by either legislative or court action since the liability is contractual and it may not be interferred with. Furthermore, it may not be diminished or reduced subsequent to the time the liability accrued because of the prohibition of retroactive interference. It is true that the court in these cases suggested that a settlement might possibly be made of the liability on account of the insolvency of the obligor or a new and different liability might be substituted, as a novation, providing that such settlement was fairly made with due regard for the interest of the creditors whom the liquidator must respect.

In the case before us there is no question of insolvency on the part of the stockholders who are liable, nor can the substitution of the certificates of participation be regarded as a novation. The creditors got no special further benefits from the reorganization which could be regarded as a substitution for their right to pursue the double liability. They were entitled to their share of the assets, and they were en-

titled at any time to any credit they might obtain from the obligors. There is no indication that the payment to them of the 20% gave them any advantage they might not have obtained without the reorganization and whether or not the reorganization took place they had their rights against the stockholders and their rights to participate in the assets which were transferred to the loan company. We conclude, therefore, that the interpretation here adhered to is further impelled by the realization that a contrary holding would compel the implication that the court decreed unconstitutionally, which assumption is, of course, unjustified in the absence of language that is clear and convincing.

A further supporting argument is made by the plaintiffs to the effect that any postponement of liability, as claimed by the defendants, would reflect an attempt by the court to interfere with the statute of limitations which assumption is clearly prohibited.

It must be concluded, therefore, in accordance with the reasoning of the South Dakota court in the above cases, that all reference in the decree to stockholders' liability are only such as are incidental to the real objective of the reorganization, to-wit, the purpose of enabling the bank to reorganize and to start anew with all assets freed from obligations of prior creditors. The reorganization can only be accomplished in due regard by the parties and the court for the rights of creditors, and any attempt to prejudice them could not be countenanced.

There are no special inducements in the plan for the release by the creditors of the right to double liability. The inducements presented by the plan are to encourage investment in the new stock and to that end all assets obligated are segregated for the purpose of meeting prior claims, leaving the reorganized bank free. So far as new stockholders are concerned, it is clear that the total import of the arrangement is to permit said stock to be pledged with the Loan Company and thereby free from transfer or attachment or levy by creditors

for five years, in consideration of the fact that earnings on said stock are paid to said creditors and depositors for that time. At the end of five years the stock reverts to the owner with no further limitations or protection.

We have given consideration to another proposition which we think might possibly have some bearing on the question before us for determination. The statute providing for liquidation, to-wit, §687, GC, and the following indicates very clearly that so long as the liquidator has control he is the only existing party who may pursue the double liability in behalf of creditors. §687-10, GC, (when the liquidation is entirely in his control) so provides. §687-21, GC, provides that when the liquidator delegates the duty of liquidation to the board of directors to be conducted under his supervision, no court shall appoint a receiver for any purpose in connection with such liquidation, and it is concluded that the power of pursuing double liability in that instance would rest solely with the board under the supervision of the liquidator in behalf of creditors. §687-22, GC, under which the liquidator may turn the liquidation back to the board after having partially completed the same himself, also has been interpreted as precluding the pursuit of such liability by any other party than the board under the supervision of the liquidator. So when the law appoints authority to bring the action in behalf of the creditors, the creditors are barred from bringing such suit themselves, or of having any interference with the liquidation by any new receiver or officer of the court which would necessarily duplicate and conflict with the operation of that function by the duly designated officials.

This reasoning is supported by the case of **Feldman v The Standard Trust Bank of Cleveland, 46 Oh Ap 67,** and by the case of **Fulton, Supt. v Wetzel, 47 Oh Ap 72,** and the case of **State, ex Bettman v Common Pleas Court, 124 Oh St 269,** and many other authorities not necessary to mention.

An investigation of the decree of the court which comprises the terms of the reorganization shows that this right to pursue double liability was in no wise transferred to the company which was formed for the purpose of liquidating assets. The right to sue for double liability was not an asset of the insolvent bank and it certainly was not among the assets turned over by the bank to the liquidating company. This right against the stockholders was left hanging high and dry and the right to pursue it can only be asserted by the creditors. The language of the decree cannot be interpreted as in any way abolishing or diminishing the right, its only effect is to require the dividends on the new stock purchased to be applied towards certificates of participation thereby reducing the statutory double liability only to the extent of the dividends so paid. Furthermore, by the terms of the decree the liquidator is absolved of all further connection and responsibility.

The defendants refer to a defense of estoppel, claiming that those depositors who accepted certificates of deposit are estopped. Inasmuch as the language of these consents is not before us for ruling on the demurrer, the question can not be ruled on at this time.

The defendants point out that under the statute permitting reorganization, depositors' claims may be reduced or diminished and the rights to double liability may be so reduced Even though this be true, we are unable to find any language in the decree which in any wise reduces or diminishes this right of double liability. On the contrary, the decree specifically continues the same.

The defendants also contend that this case must be a suit at law. This would be true if the liquidator were asserting a specific amount against each specific defendant, but when the action is brought as a class suit by creditors generally who are not in possession of the books, and not aware of the definite amounts of the respective liabilities, the action clearly involves equity with its attendant necessities for discovery and accounting.

The demurrer must, therefore, be overruled; exceptions allowed to all proper parties.